**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHENG-YEN TEH HILLENBRAND, | : |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| HOBOKEN BOARD OF EDUCATION, et al., | : |
| | : |
| | : |
| Defendants. | : |

Civil Action No. 13-598 (SRC)

**OPINION**

**CHESLER**, District Judge

This matter comes before the Court on the motion by the Hoboken Education Association ("HEA") and its president, Gary Enrico ("Enrico"), (collectively the "Association Defendants") to dismiss all claims against them. (Docket Entry 11)  Plaintiff Cheng-Yen Teh Hillenbrand ("Plaintiff" or "Hillenbrand") has opposed the motion in part. (Docket Entry 13)  The Court has considered the parties' submissions and opts to rule on the motions without oral argument. See Fed. R. Civ. P. 78.  For the reasons that follow, the Court will grant the Association Defendants' motion to dismiss all claims against them.

This lawsuit arises out of Plaintiff's termination as an employee of the Hoboken Board of Education (the "Board").  According to the Complaint, Plaintiff was employed by the Board for approximately five years, beginning in September 2006.  She began her tenure as the Coordinator of the Johns Hopkins Program, which caters to the school district's gifted and talented children.  Plaintiff identified candidates for the program, assessed their progress, and administratively

supported the students' participation in a curriculum of online course work taught by Johns Hopkins University professors. Plaintiff eventually added other responsibilities within the Hoboken public school system and received performance evaluations ranging from "satisfactory" to "excellent" in the four years leading up to the 2010-2011 school year. In 2010-2011, Plaintiff prepared approximately 100 students in the district for the Johns Hopkins qualifying exam, managed the progress of 60 students already in the program, and taught English and mathematics at the K-5 level. On March 22, 2011, Thomas G. Connors Elementary School Principal Laurinda Pereira gave Plaintiff a negative performance evaluation. Shortly thereafter, Board Superintendent Mark Toback decided not to renew Plaintiff's employment contract.

Plaintiff has brought suit against the Board, Toback, the HEA, a teacher's union party to a collective bargaining agreement with the Board, and its president, Enrico. Plaintiff alleges violations of 42 U.S.C. § 1983 and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq., ("NJLAD") and also asserts claims for wrongful discharge, breach of contract, breach of the covenant of good faith and fair dealing, and tortious interference with contract.[1] The Association Defendants have moved to dismiss all claims against them for failure to state a claim upon which relief can be granted.

At the outset, the Court notes that Plaintiff has conceded that her § 1983 claims against the Association Defendants should be dismissed. The Association Defendants suggest half-heartedly that dismissal of the § 1983 strips this Court of subject matter jurisdiction over the

---

[1] According to the Complaint, the § 1983, NJLAD, wrongful discharge, and breach of contract claims are made against all Defendants. The count for breach of the implied covenant of good faith and fair dealing is unclear, but the Court construes it to apply to all Defendants. The count for tortious interference with contract is pled only against Enrico.

attendant state law claims. However, as Plaintiff has correctly pointed out, federal claims still remain against the Board and Toback, and those claims share with the § 1983 claims a "common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). Accordingly, this Court has supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1367.

The wrongful discharge claims against the HEA and Enrico must be dismissed, because neither the HEA nor Enrico *employed* Plaintiff. Indeed, the Complaint expressly alleges that Plaintiff was employed by the Board, not the Association Defendants. "Under the common law of New Jersey, an employee has a cause of action for wrongful discharge if an employee is terminated in violation of a 'clear mandate of public policy.'" Ballinger v. Del. River Port Auth., 172 N.J. 586, 604 (2002) (quoting Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 72 (1980)). "'The sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions' as well as professional codes of ethics under certain circumstances." Id. (quoting Pierce, 84 N.J. at 72). Plaintiff alleges that her termination was in clear violation of New Jersey State law, public policy, and the collective bargaining agreements and policies of the Defendants. Assuming, for the sake of argument, that Plaintiff's termination was unlawful, the wrongful discharge claims against the Association Defendants must still fail, because neither the HEA nor Enrico are even alleged to have terminated her. The Court's view is that "[a]s a matter of law, only an employer can be liable for the tort of wrongful discharge in violation of public policy." Khajavi v. Feather River Anesthesia Med. Grp.,100 Cal. Rptr. 2d 627, 642 (Cal. Ct. App. 2000). This is because "the duty on which the tort is based is a creature of the employer-employee relationship, and the breach of that duty is the employer's improper

discharge of an employee otherwise terminable at the will or whim of the employer." Weinbaum v. Goldfarb, Whitman & Cohen, 54 Cal. Rptr. 2d 462, 465 (Cal. Ct. App. 1996). See also McCain v. Kindred Healthcare, Inc., No. 6:10-cv-6212-SI, 2011 U.S. Dist. LEXIS 140722, *2 (D. Or. Dec. 7, 2011) ("For purposes of a wrongful discharge claim, only an employer can discharge an employee."); Al-Dahir v. Hamlin, No. 10-2571-CM, 2011 U.S. Dist. LEXIS 99105, *4 (D. Kan. Sept. 2, 2011) (defendant could not be liable for wrongful discharge because he was not plaintiff's employer). Plaintiff has not cited any authority for the proposition that a non-discharging entity may be held liable for wrongful discharge.

Plaintiff's claims under the NJLAD must also be dismissed. Plaintiff asserts NJLAD claims against the Association Defendants for ethnic discrimination, age discrimination, and retaliation. The NJLAD generally prohibits employers from discharging any individual due to race, national origin, ancestry, age, or nationality. N.J.S.A. § 10:5-12(a). It also prohibits an employer from taking reprisals against any person for having opposed any practices or acts forbidden under the NJLAD. N.J.S.A. § 10:5-12(d). Plaintiff, who was 64 years old on the date of her termination, alleges that she was discriminated against on the basis of her age. She also alleges that she was retaliated against for having opposed the Board's discriminatory employment practices. Finally, Plaintiff alleges that she was discriminated against on the basis of her Chinese ethnicity. As against the Association Defendants, all of these claims suffer from the same defect as Plaintiff's wrongful discharge claim – by its express terms, liability under § 10:5-12 attaches only to "employers." See Horvath v. Rimtec Corp., 102 F. Supp. 2d 219, 228 (D.N.J. 2000) (stating that N.J.S.A. 10:5-12(a) "imposes liability only on employers and not on individual employees").

The Court next considers Plaintiff's claims against the Association Defendants for breach of contract and breach of the implied duty of good faith and fair dealing. The Court concludes that the breach of contract claims must be dismissed, because the Complaint has failed to allege that a contract even existed between Plaintiff and the Association Defendants. At most, Plaintiff has pled that an employment contract existed between her and the Board and that a collective bargaining agreement existed between the Board and the HEA – the Complaint alleges no facts that would establish a contract between Plaintiff and either the HEA or Enrico. As such, Plaintiff's claims against the Association Defendants for breach of the implied covenant of good faith and fair dealing must also fail. See Wade v. Kessler Inst., 172 N.J. 327, 345 (2002) ("In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing.") (quoting Noye v. Hoffmann-La Roche Inc., 238 N.J. Super. 430, 434 (App. Div. 1990)).

Finally, the Complaint asserts a claim for tortious interference with contract against Enrico only. In New Jersey, a plaintiff must show "(1) the existence of the contract (or the prospective economic relationship); (2) interference which was intentional and with malice; (3) the loss of the contract or prospective gain as a result of the interference; and (4) damages." Velop, Inc. v. Kaplan, 301 N.J. Super. 32, 49 (App. Div. 1997). The Association Defendants argue that Plaintiff's tortious interference claim is necessarily subsumed by a claim for breach of the duty of fair representation, since Plaintiff is essentially alleging bad-faith representation against a union official. In New Jersey, the duty of fair representation requires a union to process grievances for all employees in a bargaining unit "with complete good faith, with honesty of purpose and without unfair discrimination against a dissident employee or group of employees."

D'Arrigo v. N.J. State Bd. of Mediation, 119 N.J. 74, 79 (1990) (quoting Lullo v. International Asso. of Fire Fighters, 55 N.J. 409, 427 (1970)).  In arguing for displacement of Plaintiff's tortious interference claim, the Association Defendants rely on a number of cases indicating that state interference claims may be preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151–169.  See, e.g., Davenport v. Terry, 134 N.J. Super. 88, 94-95 (App. Div. 1975). But the NLRA does not apply to New Jersey State employees, In re Univ. of Med. & Dentistry of N.J., 144 N.J. 511, 527 (1996) (citing 29 U.S.C. § 152(2)), and is therefore not directly implicated in this case.  The Association Defendants also rely on authorities from other districts standing for the proposition that, under state labor law, a public sector union member's common law tort claims are displaced by the member's duty of fair representation claim.  See, e.g., Clissuras v. New York, 131 A.D.2d 717 (N.Y. App. Div. 2d Dep't 1987).  This Court need not reach the question, however, because, as a threshold matter, the Complaint simply fails to state a claim for tortious interference.

A complaint will survive a motion under Rule 12(b)(6) if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Third Circuit, following Twombly and Iqbal, has held that Rule 8(a) "requires not merely a short and plain statement, but instead mandates a statement 'showing that the pleader is entitled to relief.'"  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).  The Complaint in this case asserts that Enrico "apparently utilized his position to 'horse trade' and allow his family members to be hired in lieu of Plaintiff's contract . . . ." (Compl. ¶ 65); that "Enrico utilized his long standing position to amend contract requirements and hiding [*sic*] those

6

changes from the Plaintiff, to her detriment" (Compl. ¶ 69); and that "Enrico and his family personally gained by Defendant Enrico's actions."  (Compl. ¶ 70)  Plaintiff has not alleged sufficient facts to raise a plausible entitlement to relief.  See Iqbal, supra, 129 S.Ct. at 1949.  The tortious interference claim rests on conclusory language unsupported by the kind of factual allegations necessary to survive a motion to dismiss.  For example, the Complaint does not state what acts Enrico engaged in that constituted a "horse trade" at Plaintiff's expense, and when these acts occurred.  The Complaint is also impermissibly vague about how Enrico "amend[ed] contract requirements" or how he hid those changes from the Plaintiff – indeed, the Court is left to guess whether the contract referred to is the collective bargaining agreement or Plaintiff's alleged contract with the Board.  The Complaint also fails to specify how Enrico's family personally gained from the alleged misconduct.  At a minimum, the Complaint has failed to adequately plead intentional and malicious interference.  As such, the tortious interference claim against Enrico must be dismissed.

For the foregoing reasons, the Court will dismiss all claims against Defendants Enrico and the HEA.  An appropriate order accompanies this opinion.


   s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

DATED: June 3, 2013